## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| EUGENE RILEY, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 8866 |
| ) | |
| JACQUELINE LASHBROOK,[1] Warden, ) | Judge Rebecca R. Pallmeyer |
| Menard Correctional Center, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Eugene Riley is a prisoner in the custody of Respondent Jacqueline Lashbrook, warden of Menard Correctional Center. Petitioner was convicted of first-degree felony murder in Illinois state court on May 9, 2011. Having exhausted his remedies in state court, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He contends that the trial court failed to instruct the jury about all the elements of his claim and that he was therefore denied his Sixth Amendment right to have a jury determine his guilt beyond a reasonable doubt. He also contends that his counsel's failure to request the proper jury instructions deprived Petitioner of his Sixth Amendment right to the effective assistance of counsel. Respondent argues that Petitioner has procedurally defaulted on his claim that the state trial court's jury instructions were inadequate. In the alternative, Respondent contends that the claim is not cognizable in federal court. Respondent also argues that Petitioner's claim of ineffective assistance of counsel is meritless. For the reasons stated below, the court concludes that neither of Petitioner's claims has merit and therefore denies the petition.

---

[1] During the pendency of this case, Jacqueline Lashbrook replaced Rick Harrington as Petitioner's custodian at the Menard Correctional Center. Duncan has been substituted as the proper Respondent. *See* FED. R. CIV. P. 25(d)(1).

**BACKGROUND**

The court takes the following facts from the Illinois Appellate Court's decision affirming Petitioner's conviction. *See People v. Riley*, 2013 IL App (1st) 112464-U (1st Dist. 2013).[2] On the afternoon of September 24, 2009, a fight broke out among high school students near a community center in the Roseland neighborhood in Chicago. *Id.* at ¶ 3. One of the students, Derrion Albert, died as a result of injuries he suffered during the fight. *Id.* at ¶ 4. Three men were charged in connection with the homicide: Petitioner, Eric Carson, and Silvonus Shannon. *Id.* at ¶ 4. Though Petitioner was initially charged with counts of first-degree murder and mob action, the State dropped those counts before trial, leaving only one count for felony murder, predicated on the crime of mob action. *Id.*

**I.  Trial**

The evidence at trial included the eyewitness testimony of T-Awannda Piper, an employee of the community center, who said she witnessed the fight from roughly twelve feet away through a window of the community center. *Id.* at ¶ 6. Piper said she saw the victim fall to his knees after a young man hit him over the head with a board. *Id.* at ¶ 5. When the victim tried to get up, Piper testified, another young man punched the victim in the face, and a third young man began to kick the victim. *Id.* Piper went outside to try and break up the fight and eventually dragged the victim, who still had a pulse, into the community center before an ambulance arrived and took him away. *Id.* at ¶ 6. The victim died of his injuries before detectives working on the case arrived at the hospital. *Id.* at ¶ 8.

The State also presented video footage[3] of the beating at trial. The footage showed

---

[2]  A federal court reviewing a petition for a writ of habeas corpus presumes the correctness of the state court's factual determinations; a habeas petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

[3]  Two separate cameras captured the fight on video. One video came from a surveillance camera at the community center; the other was captured on a bystander's cellular phone.

2

Petitioner hitting an unidentified young man wearing a white shirt several times. *Id.* at ¶ 11. It also showed an unidentified man using a board to hit both Petitioner and the victim, both of whom were wearing black shirts. *Id.* The video continued, showing a young man swinging a board at Petitioner's brother and then throwing the board at another man wearing a white shirt. *Id.* at ¶ 12. After the time when the board was swung at his brother, Petitioner can be seen on the video picking up the board and running after people. *Id.* Two other young men are shown kicking the victim, who had fallen to the ground after being hit in the head. *Id.* at ¶ 13. After Petitioner's brother walks away from the scene, the video shows, Petitioner runs toward the victim, by now lying on the ground, and hits him over the head with a board. *Id.* Other young men continued to kick the victim while Petitioner struck the victim with the board again. *Id.*

One of the students present during this episode testified at trial, identifying the actors in a slowed-down version of the video. He testified that Eric Carson was the young man who hit the victim with a board, causing him to fall down; Deonte Johnson was the person who punched the victim when he tried to get back up; Silvonus Shannon was the young man who kicked the victim; and Petitioner was the person who hit the victim over the head with a board while he was on the ground. *Id.* ¶ 16. The medical examiner who performed the autopsy on the victim testified that she believed the victim died of cerebral injuries "caused by blunt head trauma as a result of assault." *Id.* ¶ 20. During cross-examination, the medical examiner testified that it was possible the initial blows to the victim's head would have killed him independently of any other injury. *Id.* ¶ 21.

The jury also viewed a videotape of an interview police conducted with Petitioner three days after the fight. During the interview, Petitioner recounted that he and his brother went to pick up their cousin Silvonus from school on the day of the fight. *Id.* ¶ 9. He told the police there had been "talk" that Silvonus was going to be "jumped" after school, and after Petitioner and his brother picked Silvonus up, they saw "some dudes" make gestures at their car. *Id.* When the young men approached Petitioner's brother and Silvonus, who had exited the car,

3

Petitioner explained that he got out of the car and "ran towards them and we just started fighting, whatever." *Id.* Though Petitioner initially denied hitting anyone, police confronted him with the video footage of the beating, which appeared to show Petitioner striking the victim with a board. *Id.* at ¶ 10. Petitioner explained that he was not trying to hit the victim and was just trying to defend himself and his brother. *Id.*

Petitioner also testified at trial. He admitted that he when he got out of his car, he started swinging at a young man who had pinned his brother to the ground. *Id.* ¶ 27. He also admitted that after someone hit him with a stick and threw the stick at his brother, Petitioner hit the victim. *Id.* Petitioner explained that he did so because he was afraid and did not know what was going on. *Id.* Petitioner also acknowledged that while the victim was unarmed on the ground with his arms up, Silvonus kicked him, and Petitioner struck the victim over the head twice with a board. *Id.* ¶ 28.

At the close of evidence, the trial court denied defense counsel's request to instruct the jury on counts of involuntary manslaughter and second-degree murder. Petitioner's counsel also requested instructions for mob action and aggravated battery as lesser included offenses, but the trial court denied that request as well. The jury found Petitioner guilty of felony murder, and on July 19, 2011, the trial court sentenced him to a 32-year term of imprisonment. Petitioner filed a timely appeal in state court, arguing that his conviction should be reversed because (1) mob action, the predicate felony for his felony murder conviction, was inherent in the murder and thus could not be a predicate act to support a felony murder charge; (2) the trial court failed to instruct the jury that the predicate act in a felony murder charge must have a felonious purpose independent of the murder; (3) defense counsel's failure to request an instruction regarding independent felonious purpose constituted ineffective assistance of counsel; and (4) the trial court failed to ask potential jurors whether they understood and

accepted all four *Zehr* principles as required by Illinois Supreme Court Rule 431(b).[4]

## II.     Decision of the Illinois Appellate Court

The state appellate court rejected Petitioner's arguments and upheld his conviction. The court acknowledged that under Illinois law, "where the acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder." *People v. Davison*, 236 Ill. 2d 232, 240, 923 N.E.2d 781, 786 (2010). But the court disagreed with Petitioner's assertion that the State's only evidence of mob action was the same evidence the State presented for the murder charge: namely, that Petitioner hit the victim over the head with a board. *Riley*, 2013 IL App (1st) 112464-U, at ¶ 37. Rather, the court explained, the evidence showed that Petitioner acted with others to use force or violence to disturb the public peace by engaging in a fight with people other than the victim, such that he had completed the predicate felony of mob action even before hitting the victim with a board. *Id.* ¶ 43. Although Petitioner asserted that all of his actions leading up to hitting the victim with the board were part of an attempt to defend his brother, the court noted that the jury was under no obligation to believe that testimony, which was in apparent conflict with the other evidence. *Id.* Thus, the court concluded, the evidence at trial established that Petitioner "was acting with others to use force or violence to disturb the public peace, and thus acted with the felonious purpose to commit mob action," and that the conduct constituting the mob action was not inherent in the murder itself. *Id.* at ¶¶ 47–48.

The court also rejected Petitioner's argument that the trial court committed plain error by

---

[4] To ensure compliance with *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984), Illinois Supreme Court Rule 431(b) requires the trial court to ask each potential juror whether that juror understands and accepts the following principles: "(1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects."

5

failing to instruct the jury that the predicate felony of the felony-murder charge must have a felonious purpose independent of that for the murder. Petitioner forfeited this argument, the court concluded, because defense counsel never asked for an instruction regarding "felonious purpose." *Id.* at ¶ 51. Petitioner argued on appeal that, whether or not his counsel requested an instruction, the trial court should have given an instruction regarding independent felonious purpose *sua sponte* because the existence of such a purpose is an element of the crime of felony murder. *See People v. Turner*, 128 Ill. 2d 540, 562–63, 539 N.E.2d 1196, 1205 (1989) ("Generally, the only situations where a fair trial requires the court to *sua sponte* offer an instruction include seeing that the jury is instructed on the *elements of the crime charged* . . . .") (emphasis added) (internal quotation marks omitted). The court disagreed that an independent felonious purpose is an element of felony murder and concluded that the trial court's submission of the Illinois pattern jury instructions for felony murder and mob action were sufficient to "properly instruct[] [the jury] on the elements of the crime charged." *Id.* at ¶ 55–57.

The appellate court dealt with Petitioner's argument for ineffective assistance of counsel only briefly, stating:

> Defendant's next argument on appeal is that defense counsel was ineffective for not requesting an independent felonious purpose instruction. However, since we find that the jury was properly instructed on the elements of the crime charged, we cannot say that defense counsel committed error in failing to request a jury instruction on independent felonious purpose. (Cf. *People v. Torres,* 228 Ill.2d 382, 398 (2008) (defendant could not have negotiated a lesser sentence given that the sentence he received was the minimum possible under the sentencing scheme).

*Id.* at ¶ 59. The court also rejected Petitioner's argument that the trial court erred by failing to question potential jurors about the *Zehr* principles*, see id.* at ¶¶ 60–67, but that state-law issue is not before this court on the habeas petition. Following the appellate court's decision and a denial of his petition for rehearing, Petitioner sought leave to appeal to the Illinois Supreme Court, which denied his petition for leave to appeal on May 29, 2013. Petitioner also petitioned the United States Supreme Court for a writ of *certiorari*, which was denied on October 7, 2013.

### III.  This Petition

Petitioner filed his petition for writ of habeas corpus in this court on December 12, 2013. Petitioner insists that a required element of the crime of felony murder is that the defendant commits the predicate felony with a felonious purpose independent of the murder. *See Davison*, 236 Ill. 2d at 244, 923 N.E.2d at 788 ("[T]his court has consistently recognized that the predicate felony underlying a charge of felony murder must have an independent felonious purpose."). He also contends that whether a particular predicate felony was committed with an independent felonious purpose is a question of fact for the jury to decide. Petitioner argues, therefore, that the state trial court's failure to instruct the jury on this element of his crime deprived him of the Sixth Amendment right to have a jury determine his guilt beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (criminal defendant entitled to jury determination that he is "guilty of every element of the crime with which he is charged, beyond a reasonable doubt"). In addition to his claim that the trial court erred by failing to instruct the jury regarding independent felonious purpose, Petitioner claims that his trial counsel's failure to request such an instruction constituted ineffective assistance of counsel.

Respondent argues that Petitioner's jury-instruction claim is procedurally defaulted because his trial counsel never asked for a "felonious purpose" instruction, and the appellate court determined that he had forfeited his claim by failing to raise the issue in the trial court. In the alternative, Respondent argues that Petitioner's jury-instruction claim is not cognizable because the question of whether an independent felonious purpose is an element of the crime of felony murder is a matter of state law, and "[f]ederal habeas relief . . . is unavailable to remedy errors of state law." *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002). With respect to Petitioner's claim for ineffective assistance of counsel, Respondent merely urges the court to reject it as meritless. The appellate court concluded that the jury received appropriate instructions on the elements of the crime charged and that defense counsel's failure to request a "felonious purpose" instruction was thus not an error and did not render his assistance

7

ineffective. Respondent contends that the appellate court's judgment was a reasonable one and therefore should not be disturbed. The court addresses the parties' contentions below.

## **DISCUSSION**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the standards for granting federal habeas relief from a state-court conviction and sentence. *See* 28 U.S.C. § 2254. Under § 2254(d), a habeas petitioner cannot prevail on a claim that was previously adjudicated on the merits in state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *see Pruitt v. Neal*, 788 F.3d 248, 263 (7th Cir. 2015). Federal review of a state court's decision is highly deferential, and the state court's decision will not be disturbed as long as it is objectively reasonable. *Pruitt*, 788 F.3d at 263. A state court's decision is reasonable if it is "minimally consistent with the facts and circumstances of the case." *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002). If, however, a state court's determination is "at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary, then the writ must issue." *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999) (internal quotation marks omitted).

Respondent argues that Petitioner procedurally defaulted on his claim that the trial court provided inadequate instructions to the jury. The state appellate court concluded that Petitioner had forfeited his argument regarding the adequacy of the jury instructions in his case because he failed to request the purportedly required instruction at the trial-court level. *See Riley*, 2013 IL App (1st) 112464-U, at ¶ 51. Respondent insists that the state court's judgment on that claim is unreviewable. *See Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002) ("A federal court will not review a question of federal law decided by a state court if the decision of the state court

rests on a state procedural ground that is independent of the federal question and adequate to support the judgment."). This court is not certain, however, that the procedural basis for the appellate court's decision is entirely independent of the federal question Petitioner raised. The Illinois court expressly acknowledged that instructing the jury on elements of the crime charged is a requirement of a fair trial, whether or not defense counsel requests such instructions. *Riley*, 2013 IL App (1st) 112464-U, at ¶ 54. Thus, in determining whether defense counsel's failure to request the instructions resulted in forfeiture, the appellate court had to address (at least implicitly) the issue of whether an independent felonious purpose is an element of felony murder, such that instruction on that issue would be required under the Sixth Amendment. "Because the appellate court's discussion of [forfeiture] is intertwined with its merits analysis of [Petitioner's] claims, the state court's decision does not rest on an independent and adequate state law ground." *Sanders v. Cotton*, 398 F.3d 572, 580 (7th Cir. 2005).

Respondent also contends that this court cannot review the appellate court's ruling on Petitioner's jury-instruction claim because it rests on a determination of state law—specifically, whether an independent felonious purpose is an element of the crime of felony murder under Illinois law. Regardless of the merits of Respondent's argument at the time it was made, a Seventh Circuit decision issued subsequent to the submission of briefs in this case makes clear that Petitioner's claim is cognizable in federal court on habeas review. *See Evans v. Dorethy*, 833 F.3d 758, 761 (7th Cir. 2016), *reh'g denied* (Aug. 30, 2016), *cert. denied,* 137 S. Ct. 688 (2017). As in this case, the petitioner in *Evans* was convicted of felony murder with mob action as the predicate felony, and he argued that the trial court failed to instruct the jury on an element of his crime because it did not include an instruction on the independent felonious purpose requirement. *Id.* at 760. The Seventh Circuit rejected the state's argument, which the district court had accepted, that the petitioner's claim rested exclusively on an issue of state law. The court in *Evans* noted that petitioner was contending that the trial court violated his right to have a jury determine whether he committed each element of the charged crime, and that right is a

9

"clearly established" federal right under the Sixth Amendment. *Id.* at 761. Thus, under *Evans*, this court cannot accept Respondent's argument that Petitioner's claim raises only an issue of state law.

But though *Evans* establishes that Petitioner has raised a cognizable federal claim, it also makes clear that the substance of his claim lacks merit. After reviewing Illinois law, the Seventh Circuit concluded that "'independent felonious intent' is not an element of Illinois felony murder." *Id.* In Illinois, the court explained, whether a particular predicate act has an independent felonious purpose, is a question of law for a judge, not a question of fact for a jury. *See id.* at 761; *see also Davison*, 236 Ill. 2d at 239, 923 N.E.2d at 785. Thus "the Sixth Amendment did not require the jury to decide the issue." *Evans*, 833 F.3d at 761.

Petitioner's claim of ineffective assistance of counsel must also fail. Because independent felonious purpose is not an element of felony murder in Illinois, *see id.*, the appellate court's determination that the jury was properly instructed on the elements of the crime charged—and that counsel was thus not ineffective for failing to request a different instruction—was a reasonable one. *See Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) ("The federal habeas scheme . . . authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). Under the Seventh Circuit's interpretation of Illinois law, whether a defendant commits a predicate act of felony murder with in independent felonious purpose is a legal question for the court to decide. *Evans*, 833 F.3d at 762. And the appellate court reasonably concluded that Petitioner did commit mob action with an independent felonious purpose because the evidence showed that he fought with individuals other than the victim, thus completing the felony of mob action, prior to striking the victim with a board. *See Riley*, 2013 IL App (1st) 112464-U, at ¶ 43. Petitioner, therefore, cannot establish that the result of his proceeding would have been different had his trial counsel requested a "felonious purpose" instruction. *See Perry v. McCaughtry*, 308 F.3d 682, 689 (7th Cir. 2002) (to establish prejudice resulting from ineffective assistance, petitioner must prove reasonable probability that, but for

counsel's actions, result of proceeding would have been different).

## **CONCLUSION**

For the reasons stated above, the court denies Petitioner's petition for a writ of habeas corpus. Because this outcome is required under the Seventh Circuit's recent decision in *Evans v. Dorethy*, 833 F.3d 758, 761 (7th Cir. 2016), reasonable jurists could not "debate whether . . . the petition should have been resolved in a different manner." *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011). Petitioner has thus failed to make a "substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c), and the court declines to issue a certificate of appealability. *Id.*

ENTER:

Dated: March 23, 2017

_____
REBECCA R. PALLMEYER
United States District Judge